UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| JULIA VANCE PROBST,<br><br>    Plaintiff,<br><br>    v.<br><br>ADAMS COUNTY SHERIFF DEPT.;<br>VALLEY COUNTY SHERIFF DEPT.;<br>UNITED STATES POSTAL SERVICE;<br>IDAHO DEPARTMENT OF HEALTH<br>AND WELFARE; and ST. LUKES,<br><br>    Defendants. | Case No. 1:20-cv-00032-DCN<br><br>**INITIAL REVIEW ORDER** |

## I. INTRODUCTION

Pending before the Court is Plaintiff Julia Probst's Complaint (Dkt. 2); Amended Application for Leave to Proceed in Forma Pauperis (Dkt. 4); Draft Amended Complaint (Dkt. 13); Motion to Seal (Dkt. 14); Amended Complaint (Dkt. 20); and Brief (Dkt 23).[1] Pursuant to 28 U.S.C. § 1915, the Court must review Probst's request to determine whether she is entitled to proceed in forma pauperis—which permits civil litigants to proceed without prepayment of the filing fee or to pay the filing fee over time. *Rice v. City of Boise*

---

[1] As the Court was finalizing its review of her four complaints, Probst filed an additional six amended complaints, which she titles as "briefs," without leave of the Court. Dkts. 24, 26–30. The Court subsequently added a section only briefly adding those newly amended complaints, the substance of the recently filed documents do not alter the Court's analysis of the pending motions. Probst then filed five more "briefs" on August 5, 2020, again without leave of the Court. Dkts. 31–35. The Court will neither review nor address these new documents. If Probst believes any of the new briefs addresses the Court's concerns with her prior complaints, she may incorporate part of the August 5, 2020 briefs into a single amended complaint. Additionally, Probst is cautioned that going forward the Court will only consider a complaint that the Court has given Probst leave to amend.

INITIAL REVIEW ORDER - 1

*City*, No. 1:13-CV-00441-CWD, 2013 WL 6385657, at *1 (D. Idaho Dec. 6, 2013). Because she is filing to proceed in forma pauperis, the Court must also undertake an initial review of Probst's Complaint to ensure it meets the minimum required standards.

For the reasons explained below, the Court GRANTS Probst's application to proceed in forma pauperis and will allow her to pay the filing fee over time. However, in light of the Court's review of Probst's Complaint, it DISMISSES Probst's Complaint WITHOUT PREJUDICE, and GRANTS Probst leave to file an amended complaint. If Probst chooses to amend her Complaint, she will then be required to pay the filing fee—albeit over time.

## II. APPLICATION TO PROCEED IN FORMA PAUPERIS

"[A]ny court of the United States may authorize the commencement, prosecution or defense of any suit, action or proceeding, civil or criminal, . . . without prepayment of fees or security therefor." 28 U.S.C. § 1915(a)(1). In order to qualify for in forma pauperis status, a plaintiff must submit an affidavit that includes a statement of all assets she possesses and indicates that he is unable to pay the fee required. The affidavit is sufficient if it states that the plaintiff, because of her poverty, cannot "pay or give security for the costs" and still be able to provide for herself and dependents "with necessities of life." *Adkins v. E.I. DuPont de Numours & Co.*, 335 U.S. 331, 339 (1948). The affidavit must "state the facts as to affiant's poverty with some particularity, definiteness and certainty." *United States v. McQuade*, 647 F.2d 938, 940 (9th Cir. 1981) (internal quotation marks and citation omitted).

The Court has examined Probst's application to proceed in forma pauperis and finds it does not conclusively establish her indigence. Probst lists her monthly income as $948.00 and her monthly expenses as $870.00. Dkt. 4, at 2, 5. In short, Probst has approximately $78.00 in discretionary income each month. Probst did not provide the Court with any receipts or documents corroborating her various disability disbursements or how they are applied to her expenses such as rent or groceries.

For these reasons, the Court finds Probst has not sufficiently proved her indigence under 28 U.S.C. §1915 and the Court will not waive the fee entirely. Nonetheless, the Court will lessen the financial burden by allowing Probst to pay the fee over time. Probst must pay the fee in $50 monthly installments.

### III. SUFFICIENCY OF COMPLAINT

**A. Standard of Law**

The Court is required to screen complaints that are brought by litigants who seek in forma pauperis status. *See* 28 U.S.C. § 1915(e)(2). The Court must dismiss a plaintiff's complaint, or any portion thereof, if it: (1) is frivolous or malicious; (2) fails to state a claim upon which relief can be granted; or (3) seeks monetary relief from a defendant who is immune from such relief. *See* 28 U.S.C. § 1915(e)(2)(B)(i–iii). Pleadings prepared by *pro se* litigants are held to a less stringent standard and are liberally construed. *Haines v. Kerner*, 404 U.S. 519, 520 (1972); *see also, Resnick v. Hayes*, 213 F.3d 443, 447 (9th Cir. 2000); *King v. Atiyeh*, 814 F.2d 565, 567 (9th Cir. 1986).

An in forma pauperis complaint is frivolous if it has "no arguable basis in fact or law." *O'Loughlin v. Doe*, 920 F.2d 614, 617 (9th Cir. 1990). The Supreme Court has stated

that a complaint filed in forma pauperis may be dismissed as frivolous if it is premised upon "fantastic or delusional scenarios," outlandish legal theories, or the infringement of a legal interest that does not exist. *Neitzke v. Williams*, 490 U.S. 319, 327-28 (1989) (superseded by statute on other grounds as stated in *Lopez v. Smith*, 203 F.3d 1122, 1126 (9th Cir. 2000)). Moreover, "[a] finding of factual frivolousness is appropriate when the facts as alleged rise to the level of the irrational or the wholly incredible, whether or not there are judicially noticeable facts available to contradict them." *Denton v. Hernandez*, 504 U.S. 25, 33 (1992).

Additionally, a complaint should be dismissed under Federal Rule of Civil Procedure 8 if the factual allegations are not "plausible," but merely "conceivable." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1951 (2009). A complaint should be dismissed under Rule 8 if the factual assertions in the complaint, taken as true, are insufficient for the reviewing court plausibly "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S. Ct. at 1949. "Vague and conclusory allegations of official participation in civil rights violations are not sufficient to withstand a motion to dismiss." *Ivey v. Bd. of Regents of Univ. of Alaska*, 673 F.2d 266, 268 (9th Cir. 1982). Although the Court generally construes *pro se* pleadings liberally when conducting an initial review, "*pro se* litigants must follow the same rules of procedure that govern other litigants." *Id.* (quoting *King*, 814 F.2d at 567). However, if amending the complaint would remedy the deficiencies, plaintiffs should be notified and provided an opportunity to amend. *See Jackson v. Carey*, 353 F.3d 750, 758 (9th Cir. 2003).

B. Discussion

Here, Probst has essentially filed four complaints.[2] She filed her original complaint on January 21, 2020. Dkt. 2. She filed what she titled her "Draft Amended Complaint" on May 1, 2020. Dkt. 13. She then filed her "Amended Complaint" on June 17, 2020. Dkt. 20. Finally, she filed her "Brief" on July 9, 2020, which is essentially a copy of her June 17, 2020 amended complaint. Dkt 23. The Court is unsure what complaint it needs to review; it is unclear if all of the complaints are moot except for the most recently filed July 9, 2020 version. However, as each complaint is insufficient, the Court will briefly review why.

1. *January 21, 2020 Original Complaint (Dkt. 2)*

In Probst's original complaint, she accuses five entities of violating her civil rights, creating false records, and distributing false records. Dkt. 2, at 6–13. Her complaint against each entity is insufficient. She has failed to allege either a plausible 42 U.S.C. § 1983 claim or a *Bivens* claim against the various state, federal, or private entities.

a. Claim Against Valley County Sheriff Department

First, Probst alleges she is bringing a § 1983 claim against the Valley County Sheriff Department ("VCSD"). In general, "[t]o establish § 1983 liability, a plaintiff must show both: (1) deprivation of a right secured by the Constitution and laws of the United States; and (2) that the deprivation was committed by a person acting under color of state law." *Chudacoff v. Univ. Med. Ctr. of S. Nev.*, 649 F.3d 1143, 1149 (9th Cir. 2011) (citing *Broam*

---

[2] As previously noted, Probst filed six more amended complaints subsequent to the Court reviewing her first four complaints. Her new complaints do not change the Court's analysis but shall be briefly addressed below.

*v. Bogan*, 320 F.3d 1023, 1028 (9th Cir. 2003)).

Bringing a § 1983 claim against a municipal police department is essentially bringing the claim against the municipality. *See Annan-Yartey v. Honolulu Police Dep't*, 351 F. App'x 243, 246 (9th Cir. 2009). Such a claim is considered a *Monell* claim. *See Monell v. Department of Social Servs. of City of New York*, 436 U.S. 658 (1978).

In a *Monell* claim, a municipality or police department performing a state function "may be held liable under § 1983 when the individual who committed the constitutional tort was an official with final policy-making authority or such an official ratified a subordinate's unconstitutional decision or action and the basis for it." *Clouthier v. County of Contra Costa*, 591 F.3d 1232, 1250 (9th Cir. 2010), *overruled in part on other grounds by Castro v. Cty. of Los Angeles*, 833 F.3d 1060 (9th Cir. 2016) (en banc). A police department may not, however, be sued under a *respondeat superior* theory. A plaintiff must therefore show "*deliberate* action attributable to the municipality [that] directly caused a deprivation of federal rights." *Bd. of Cty. Comm'rs v. Brown*, 520 U.S. 397 (1997). "Where a court fails to adhere to rigorous requirements of culpability and causation, municipal liability collapses into *respondeat superior* liability." *Id.*

In addition, a policy of inaction may be a municipal policy within the meaning of *Monell*. *Oviatt v. Pearce*, 954 F.2d 1470, 1474 (9th Cir. 1992) ("[A] local governmental body may be liable if it has a policy of inaction and such inaction amounts to a failure to protect constitutional rights."). However, liability of an allegedly improper custom or policy may not be predicated upon isolated or sporadic events; rather, "it must be founded upon practices of sufficient duration, frequency and consistency that the conduct has

become a traditional method of carrying out policy." *Trevino v. Gates*, 99 F.3d 911, 918 (9th Cir. 1996) (citations omitted).

In sum, to bring a § 1983 claim against a municipality, a plaintiff must allege: (1) the plaintiff was deprived of a constitutional right; (2) the municipality or entity had a policy or custom; (3) the policy or custom amounted to deliberate indifference to plaintiff's constitutional right; and (4) the policy or custom was the moving force behind the constitutional violation. *Mabe v. San Bernardino Cnty.*, 237 F.3d 1101, 1110–11 (9th Cir. 2001). Since *Iqbal*, courts have repeatedly rejected conclusory *Monell* allegations that lack factual content from which one could plausibly infer *Monell* liability. *See, e.g.*, *Webster v. Bronson*, 402 F. App'x 280, 282 (9th Cir. 2010) (holding plaintiff had "failed to state a *Monell* claim because he alleged no *facts* suggesting that his constitutional rights were violated pursuant to a policy, practice, or custom of the County.") (emphasis added); *Rodriguez v. City of Modesto*, 535 Fed. App'x 643, 646 (9th Cir. 2013) (affirming the district court's dismissal of *Monell* claim based only on conclusory allegations and lacking factual allegations).

Probst generally claims that from 1998 to 2004, unidentified VCSD officials falsified twenty incident reports to make it appear Probst was "not in [her] right mind." Dkt. 2, at 6. Probst alleges the reports were intended to defame her. Setting aside potential statute of limitations issues, Probst fails to allege facts establishing that VCSD had a "formal policy or custom in place pursuant to which a city employee could have committed a constitutional violation; (2) the individual who allegedly committed the constitutional tort was an official with final policy-making authority; or (3) an official with final policy-

making authority ratified a subordinate's allegedly unconstitutional decision or action." *Annan-Yartey*, 351 F. App'x at 246.

Nor has Probst alleged a constitutional tort. Contrary to Probst's allegations, the Court does not see how falsifying official records (while illegal) violates her First Amendment rights. Nor is her allegations of defamation sufficient to create a First Amendment issue. "Business and reputation losses alone do not constitute the 'plus' that is required to transform an ordinary defamation claim into a section 1983 claim." *Buckey v. Cty. of Los Angeles*, 968 F.2d 791, 795 (9th Cir. 1992). "To state a defamation-plus claim, [a plaintiff] must join a defamation claim to a recognizable section 1983 wrong such as the denial of equal protection and substantive due process here hypothesized." *Id*.

As Probst has not plausibly alleged deliberate action attributable to the municipality that directly caused a deprivation of her constitutional rights, the Court finds her complaint against VCSD insufficient.

      b. <u>Claim Against Adams County Sheriff Department</u>

Second, Probst generally accuses the Adams County Sheriff Department ("ACSD") under § 1983 of falsifying incident reports, tampering with documents Probst had requested, and utilizing conspiracy tactics which negatively affected her interactions with society. Dkt. 2, at 7. In particular, Probst alleges that her home was broken into at least eighteen times between 2015 to 2018 (though it is unclear if she is alleging ACSD is responsible for the break-ins), and that an ACSD employee is "tapping" the computer she works on at the public library.

Probst's allegations suggest, without particularity, that her Fourth Amendment rights were violated (though once again, it is unclear *who* violated her rights). However, Probst again fails to allege facts establishing that (1) ACSD had formal policy or custom in place pursuant to which a city employee could have committed a constitutional violation; (2) the individual who allegedly committed the constitutional tort was an official with final policy-making authority; or (3) an official with final policy-making authority ratified a subordinate's allegedly unconstitutional decision or action. The Court finds Probst has not alleged facts supporting a *Monell* claim against ACSD.

### c.  Claim Against Idaho Department of Health and Welfare

Third, Probst states the Idaho Department of Health and Welfare ("IDHW") has falsified medical documents relating to her, incorrectly calculated her SNAP benefits, and continues to discriminate against her based on "a custom or policy or usage to treat 'mentally ill' people with disrespect." Dkt. 2, at 8. A majority of her claims occurred prior to 2010, falling outside the statute of limitations. However, at least some of her allegations relate to more recent events.

"The SNAP Act does not explicitly confer a private right of action to enforce its provisions." *Barry v. Corrigan*, 79 F. Supp. 3d 712, 734 (E.D. Mich. 2015), *aff'd sub nom. Barry v. Lyon*, 834 F.3d 706 (6th Cir. 2016). It is unclear whether SNAP provisions are enforceable by private cause of action under § 1983. *See Brooks v. Roberts*, 251 F. Supp. 3d 401, 428 (N.D.N.Y. 2017) (noting "the Second Circuit has held that *certain* SNAP provisions are enforceable by private cause of action under § 1983) (emphasis added); *Briggs v. Bremby*, 792 F.3d 239, 241–46 (2d Cir. 2015) (concluding that the time limits for

INITIAL REVIEW ORDER - 9

allocating food stamps provided in 7 U.S.C. § 2020[e][3] and [9] are privately enforceable through lawsuits pursuant to § 1983); *but c.f. Trefry v. Tracy*, No. 1:14-CV-00044-NT, 2014 WL 2154263, at *4 (D. Me. May 22, 2014), *aff'd* (June 25, 2015) (holding "the SNAP Act and its implementing regulations do not afford a private right of action . . . the SNAP Act does not authorize this Court to exercise jurisdiction over Plaintiff's private action seeking a change in federal and state food stamp policy").

The Court cannot find any Ninth Circuit caselaw on this particular question. However, the Sixth Circuit held that a court's analysis "should focus not on the SNAP Act as a whole, but on "individual provisions of the statute to determine whether a private right of action exists under each portion." *John B. v. Goetz,* 626 F.3d 356, 362 (6th Cir. 2010) (finding individual provisions in Medicaid Act enforceable under § 1983); *accord Westside Mothers v. Olszewski,* 454 F.3d 532, 538–44 (6th Cir. 2006) (holding some provisions of Medicaid Act supported private right of action, while others did not). Regardless, it is unclear if Probst is alleging a cause of action under a particular provision of the SNAP Act. If so, she has not specified which provision she is suing under. To the extent that she is suing IDHW under the SNAP Act as a whole, Probst's complaint insufficiently alleges the legal authority under which she is suing them. IDHW has inadequate notice as to what legal statute is at issue.

Probst also appears to be alleging a § 1983 claim against IDHW for its custom of treating mentally ill people poorly. She does not claim that IDHW has an express or formal policy, rather, it appears she is alleging IDHW has an informal policy.

In order to adequately plead a *Monell* claim, "the allegations in a complaint or counterclaim may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively." *AE ex rel. Hernandez v. County of Tulare*, 666 F.3d 631, 637 (9th Cir. 2012) (quoting *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011)). "Plausible facts supporting [the alleged] policy or custom" are required. *See id.* When no express or formal governmental policy is at issue, however, plaintiffs face additional requirements and must allege that the practices complained of are "so persistent and widespread as to practically have the force of law." *Connick v. Thompson*, 563 U.S. 51, 61 (2011). In these cases, the custom "must be founded upon practices of sufficient duration, frequency and consistency that the conduct has become a traditional method of carrying out policy" and liability "may not be predicated on isolated or sporadic incidents." *See Trevino v. Gates*, 99 F.3d 911, 918 (9th Cir. 1996). In light of these exacting standards, single instances of misconduct are usually insufficient to establish a municipal custom. *See Navarro v. Block*, 72 F.3d 712, 714 (9th Cir. 1996).

Probst asserts that IDHW has an informal custom discriminating against people with mental illness. But her complaint fails to allege the type of "persistent and widespread" behavior required to impose municipal liability on IDHW. *See Trevino*, 99 F.3d at 918 (liability for improper custom "must be founded upon practices of sufficient duration, frequency and consistency that the conduct has become a traditional method of carrying out policy"). She alleges that once, in 2013, she had to wait longer than other applicants for a SNAP review and, when she was called IDHW, an employee merely told her they

were "not going to do this review." Dkt. 2, at 8. Probst also alleges that she receives fewer benefits than someone else she knows. Based on these facts, she concludes that IDHW must be discriminating against her because they believe she is mentally ill. Even at this early stage, more is needed for Probst's *Monell* claim against IDHW; she must assert facts that support her claim that IDHW has a persistent and widespread custom of discriminating against disabled individuals. The current allegations are insufficient to meet that standard.

Additionally, it is unclear which constitutional right Probst is claiming IDHW violated in this case. The Court, reading her complaint liberally, assumes she is alleging that IDHW has a custom that violates the Equal Protection Clause by treating Probst[3] and similarly situated applicants—mental ill individuals—differently than other applicants. Assuming IDHW has such an informal policy, it is not necessarily unconstitutional. *See Martin v. California Dep't of Veterans Affairs*, 560 F.3d 1042, 1049–50 (9th Cir. 2009) ("[A] governmental policy that purposefully treats the disabled differently from the non-disabled need only be 'rationally related to legitimate legislative goals' to pass constitutional muster.") (quoting *Lee v. City of Los Angeles,* 250 F.3d 668, 687 (9th Cir. 2001) (alterations in original); *City of Cleburne v. Cleburne Living Ctr.,* 473 U.S. 432, 442–43 (1985) (declining to apply heightened scrutiny to a classification based on diminished mental capacity).

### d. Claim Against St. Luke's

Fourth, Probst generally accuses St. Luke's of falsifying records related to her

---

[3] Probst asserts she is not mentally ill, but that she is wrongfully perceived and treated as mentally ill by others—including Defendants in this case.

physical and mental health diagnosis and treatment, and of violating her privacy rights. However, is unclear what Probst is alleging St. Luke's actually did. She writes in her compliant "Deception, Misrepresentation, Fraud?" Dkt. 2, at 9. Probst, herself, appears to be questioning what claim she is bringing when she includes a question mark in her cause of action.

It is not a Defendants' responsibility to decipher what a claimant is alleging; it is a plaintiff's obligation to provide the legal authority along with sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively. Additionally, even if Probst had clearly alleged that St. Luke's violated her constitutional rights (which she did not do), Probst has not alleged that St. Luke's operated under the color of state law[4] *or* that St. Luke's had a custom or policy that amounted to deliberate indifference to Probst's constitutional rights and/or that such policy or custom was the moving force behind the constitutional violation. Probst's claim against St. Luke's

---

[4] Generally, "[p]rivate hospitals, doctors, and nurses are not . . . considered state actors amenable to suit under § 1983." *Sliwinski v. Maysent*, No. 3:18-cv-2653-CAB, 2019 WL 581720, at *4 (S.D. Cal. Feb. 13, 2019) (citing *Briley v. California*, 564 F.2d 849, 855–56 (9th Cir. 1977)). Courts have not found that private hospitals are state actors merely because they are subject to state regulation. *See Chudacoff*, 649 F.3d at 1149 (stating the mere fact that a private hospital is "subject to state regulation does not by itself convert its action into that of the State for purposes of the Fourteenth Amendment") (internal quotation marks and citation omitted). Nor have courts found state action when a private, non-profit hospital's "state links consist merely of receipt of federal funds under the Hill-Burton, Medicaid, and Medicare programs, and exemption from state and federal taxes." *Id.* (citation omitted). Courts have, however, found state action when: a state has delegated its obligation to provide medical care to inmates to a private hospital or medical provider, *McKenzie v. Jorizzo*, No. 1:13-cv-1302-AA, 2015 WL 127826, at *4 (D. Or. Jan. 6, 2015) (collecting cases); when a private hospital or physician enters into a contract with the state to provide medical care to inmates, *McKinney v. Cty. of Imperial*, No. 18-7198, 2019 WL 384323, at *3 n.6 (C.D. Cal. Jan. 3, 2019); when a private party has contracted with the state to provide medical care to indigent citizens, *Sliwinski*, 2019 WL 581720, at *4 (citing *Lopez v. Dep't of Health Servs.*, 939 F.2d 881, 883 (9th Cir. 1991)); and when "a publicly financed hospital . . . leased its management and operation to a private corporation." *Chudacoff*, 649 F.3d at 1150 (citation omitted).

INITIAL REVIEW ORDER - 13

is insufficient.

      e. Claim Against United States Postal Office

Fifth, Probst alleges the United States Postal Office illegally distributed her mail to others without her permission or guidance. Dkt. 2, at 10. Probst appears to be asserting a *Bivens* claim against the federal agency. *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971).

A *Bivens* claim is a private action against federal officials in their individual capacities for alleged violations of a plaintiff's constitutional rights; but, the right to pursue such an action is qualified and not absolute. *Adams v. Johnson,* 355 F.3d 1179, 1183 (9th Cir. 2004). Specifically, Plaintiffs may not assert a *Bivens* or *Bivens*-like cause of action against a federal agency (of federal agents) for actions taken in the course and scope of their employment. *See Ibrahim v. Dep't of Homeland Sec.*, 538 F.3d 1250, 1257 (9th Cir. 2008) ("But no *Bivens*-like cause of action is available against federal agencies or federal agents sued in their official capacities."); *FDIC v. Meyer*, 510 U.S. 471, 486 (1994) (holding plaintiff could not assert a *Bivens*-type cause of action directly against a federal agency).

Probst cannot assert a *Bivens* claim against the United States Postal Office, a federal agency. Her *Bivens* claim is barred and dismissed WITH PREJUDICE.

      f. Conclusion

Probst has insufficiently alleged complaints against all five Defendant entities. The Court dismisses her January 21, 2020 complaint in full.

### 2. May 1, 2020 Draft Amended Complaint (Dkt. 13)

Probst filed her "Draft Amended Complaint" on May 1, 2020. Dkt. 13. She alleges she is filing under § 1983 and *Bivens*. *Id*. at 2. To the extent she is alleging *Monell* claims under § 1983 against municipalities, her May 1, 2020 complaint is insufficient for similar reasons as her January 21, 2020 complaint. Only once in her complaint does she allege that Defendants had a policy that resulted in her rights being violated. There, she broadly alleges that "I state a fact, it is 'customary' for all of these offices to treat 'mentally ill' people differently than 'others' are treated. Discrimination based upon 'status' rather than for the actions of the person." *Id,* at 4.

Probst does not provide particularized facts concerning how each entity has a custom or policy which violated her constitutional rights. Probst has failed to allege whether the policies are formally adopted or, if not, whether the practices complained of are so persistent and widespread as to practically have the force of law. Her complaint does not give fair notice to the opposing parties of what policy or custom she is alleging they have. The Court holds her May 1, 2020 complaint against VCSD, ADSD, IDHW, St. Luke's, and the United States Postal Office is still insufficient.

Probst also includes sixteen individual names in the header of her complaint. It is unclear if she intends to sue the named Defendants or if they are included for context. Of the sixteen individual names, she only references one of them (Joyce Rodebaugh Wade) in the body of her May 1, 2020 complaint. To the extent she is attempting to sue other the fifteen individuals, her complaint is insufficient; she does not provide them sufficient notice of the factual allegations against them as she does not mention them at all in the

body of her complaint.

To the extent Probst is attempting to sue Joyce Rodebaugh Wade, she alleges that Rodebaugh Wade falsified at least twenty incident reports from 1998 to 2005. She does not allege how falsifying incident reports is a constitutional tort. Even if it was, the statute of limitations has run. *See Macy v. Howard*, 584 F. App'x 427 (9th Cir. 2014) (holding the district court properly dismissed the § 1983 complaint as barred by Idaho's two-year statute of limitations) (citing Idaho Code Ann. § 5–219(4) (two-year statute of limitations for personal injury actions)); *Knox v. Davis,* 260 F.3d 1009, 1012–13 (9th Cir. 2001) (for § 1983 claims, federal courts apply the forum state's personal injury statute of limitations and federal law for determining accrual; a § 1983 claim accrues when the plaintiff knows or has reason to know of the injury that forms the basis of the action). Probst's claim against Rodebaugh Wade is barred by the statute of limitations and is dismissed WITH PREJUDICE.

> 3. *June 17, 2020 "Amended Complaint" (Dkt. 20) and July 9, 2020 "Brief"*
> *(Dkt. 23)*

Probst's June 17, 2020 Amended Complaint and July 9, 2020 Brief appear to be identical. Thus, the Court will only review the July 9, 2020 version when reviewing for sufficiency. Probst alleges that VCSD, ACSD, IDHW, St. Luke's, and the United States Post Office discriminated against her due based on her status as a mentally ill person—a status which was a result of twenty-one or more falsified documents from 1999 to 2006. Dkt. 23, at 2-3. Probst states that she has suffered "in the past 20 years as the direct result of a misguided law enforcement agency . . . ." Dkt. 23, at 8. She admits she delayed in

INITIAL REVIEW ORDER - 16

bringing this suit. Probst fails to provide particularized facts regarding whether each entity had a custom or policy in place in the two years prior to her filing her lawsuit which amounted to deliberate indifference to Probsts' constitutional rights. She also fails to provide particularized facts on how such a policy or custom was the moving force behind a violation of her constitutional rights. The Court finds Probst's June 17, 2020 Amended Complaint and July 9, 2020 Brief insufficient.

   4. *Newly Filed Amended Complaints (Dkts. 24, 26–30)*

On July 16, 2020, Probst filed a document she titled "Brief" which appears to be another amended complaint, this time with claims solely against ACSD. Dkt. 24. She filed another "Brief" with claims solely against ACSD on July 20, 2020. Dkt. 28. The same day, she also filed four more "Briefs," i.e., amended complaints, with claims solely against St. Luke's (Dkt. 26), against United States Post Office (Dkt. 27), VCSD (Dkt. 29), and IDHW (Dkt. 30).

Federal Rules of Civil Procedure 15 allows a claimant to amend pleadings as a matter of course *once*. "In all other cases, a party may amend its pleading only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2). Probst has never requested to file amended complaints. Rather, she continues to file newly amended complaints at will, confusing the Court as to which version of her complaint to review.

The Court would have cause to ignore the amended pleadings entirely as Probst has not complied with Rule 15. However, the Court has reviewed the six newly amended complaints. It finds the new pleadings are still insufficient. While Probst provides greater details of her plight (including identifying which reports she alleges have been falsified),

her new complaints do not resolve the Court's concerns with statute of limitation issues. Nor do her complaints allege *facts* that suggest her constitutional rights were violated pursuant to a policy, practice, or custom of any of the entities. Thus, Probst's recently filed briefs do not change the Court's finding that her complaints are insufficient.

### IV. MOTION TO SEAL

Probst included her social security and the month, day, and year of her birth in the discovery to the Department of Health and Human Services that she filed with the Court. Dkt. 6, at 3. Probst now moves for the Court to redact her social security number. Dkt. 14.

Pursuant to Federal Rules of Civil Procedure 5.2, unless the court orders otherwise, parties are to only include the "the last four digits of the social-security number and taxpayer-identification number," and "the year of the individual's birth," when making a filing that contains an individual's social-security number." Rule 5.2(a). While the Court would ordinarily seal the original filing with sensitive information and order a party to file a new, redacted version with the Court, such action is unnecessary here.

Discovery requests are not to be filed directly with the Court. Rather, discovery requests are to be sent directly to the opposing party upon a finding that a pro se complaint is sufficient. Therefore, the Court will order Probst's discovery request containing the sensitive information (Dkt. 14) to be sealed. Probst is directed to not file any more discovery requests with the Court.

### V. CONCLUSION

Probst's application to proceed in forma pauperis does not establish her indigency. However, the Court will allow Probst to pay the filing fee over time. Probst must pay $50

INITIAL REVIEW ORDER - 18

a month towards the filing fee. Probst's four filed complaints are not legally sufficient at this stage; however, Probst is granted leave to amend her complaint. *See* Fed. R. Civ. P. 15.

If Probst chooses to amend her complaint, she is cautioned that she must provide particularized facts about what custom or policies each Defendant has implemented and which constitutional right that custom or policy violates. Further, Probst is reminded that the statute of limitations for both § 1983 and *Bivens* claims is two-years. *See Adamson v. Lockheed Martin Idaho Techs. Co.*, 20 F. App'x 715, 717 (9th Cir. 2001) (The applicable statute of limitations in a *Bivens* action is the same as that in a state law personal injury action. Idaho Code section 5–219(4) provides that the statute of limitations in such actions is two years.").

## V. ORDER

1. Probst's Application for Leave to Proceed in Forma Pauperis (Dkt. 4) is GRANTED as stated herein. Probst need not prepay the fee in full; however, Probst must pay $50.00 per month to the Clerk of Court, on or before the last day of each month, until the filing fee is paid in full. Failure, at any time, to comply with this payment schedule may result in dismissal of this case without further notice. The first payment is due on or before the last day of August 2020.

2. Probst's Complaint (Dkt. 2); Draft Amended Complaint (Dkt. 13); Amended Complaint (Dkt. 20); and Brief (Dkt 23) are deficient as they fail to state any claims upon which relief can be granted. Her complaints are therefore

DISMISSED WITHOUT PREJUDICE. The Court GRANTS Probst leave to file a Second Amended Complaint in substantial compliance with the Court's analysis above. Probst must file her Second Amended Complaint within sixty (60) days of the issuance of this Order.

3. Failure to file a Second Amended Complaint within the ordered timeframe will result in the full dismissal of this case WITH PREJUDICE and without further notice.

4. Probst's Motion to Seal (Dkt. 14) is GRANTED. The Clerk of the Court is directed to seal Probst's discovery request (Dkt. 6).

DATED: September 3, 2020

David C. Nye
Chief U.S. District Court Judge